**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION**


**NANCY CONNER,**

      **Plaintiff,**

**vs.**                         **Case No. 1:12cv262-MP/CAS**

**CAROLYN W. COLVIN,
Acting Commissioner of Social Security,**

      **Defendant.**

_____/


## REPORT AND RECOMMENDATION

This is a Social Security case referred to the undersigned magistrate judge for a report and recommendation pursuant to 28 U.S.C. § 636(b) and Local Rule 72.2(D).   It is now before the Court pursuant to 42 U.S.C. § 405(g) for review of the final determination of the Commissioner of the Social Security Administration (SSA) denying Plaintiff's applications for a period of disability and Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI).   After careful consideration of the entire Record, it is recommended that the decision of the Acting Commissioner, hereinafter referred to as the Commissioner, be affirmed.

## I. **Procedural History**

This case involves Plaintiff's second appearance before this Court seeking review of a decision by the Commissioner denying prior applications for DIB and SSI benefits.

### 1. Case No. 1:08cv252-MP/WCS

On March 31, 2005, Plaintiff filed separate applications for a period of disability and DIB and SSI. Doc. 20-1 at 20. In both applications, Plaintiff alleged disability beginning **March 16, 2005**. *Id.* The case proceeded to a hearing before Administrative Law Judge (ALJ) Arthur W. Stacy who entered a decision on April 4, 2008, denying Plaintiff's applications, concluding that Plaintiff was not disabled from March 16, 2005, through the date of the ALJ's decision, **April 4, 2008**. *Id.* at 28-29. The Appeals Council denied review and Plaintiff sought relief in this Court. On September 14, 2009, Magistrate Judge William C. Sherrill, Jr., entered a Report and Recommendation and recommended that the ALJ's decision be affirmed. Conner v. Astrue, Case No. 1:08cv252-MP/WCS, 2009 U.S. Dist. LEXIS 126015 (N.D. Fla. Sept. 14, 2009), *adopted*, 2010 U.S. Dist. LEXIS 24246 (N.D. Fla. Mar. 15, 2010), *aff'd*, 425 F. App'x 992 (11th Cir. 2011) (unpublished).

### 2. Case No. 1:12cv262-MP/CAS

On January 30, 2009, Plaintiff filed applications for a period of disability and DIB and SSI, alleging disability since **June 1, 2007**, claiming anxiety, depression, personality disorder, arthritis, osteoarthritis, and pain in her shoulders and elsewhere.[1] R. 23,

---

[1] During the hearing, the ALJ inquired regarding Plaintiff's alleged onset date and Plaintiff's representative responded that it was **June 1, 2007**, "the day after the unfavorable decision." R. 44, 47. In her memorandum, the Commissioner provided a

63-64, 139-77, 208, 213, 264, 289.   (Citations to the Record shall be by the symbol "R."

followed by a page number that appears in the lower right corner.)   Plaintiff's claims were

denied initially on April 20, 2009, and upon reconsideration on October 30, 2009.   R. 23,

67-81.   On December 17, 2009, Plaintiff requested a hearing.   R. 23, 84-88.   On

February 8, 2011, a video hearing was conducted by Administrative Law Judge Aaron M.

Morgan, and Plaintiff and her representative appeared in Ocala, Florida, and the ALJ and

vocational expert appeared in Jacksonville, Florida.   R. 23, 328-62.   Plaintiff was

represented by Pamela C. Dunmore, a non-attorney representative.   R. 23, 82-83,

89-90.   Jackson C. McKay testified as an impartial vocational expert.   R. 23.

On February 23, 2011, the ALJ entered his decision concluding that Plaintiff is not

disabled.   R. 31-32.   On April 29, 2011, Plaintiff requested a review of the ALJ's decision

by the Appeals Council and filed written objections.   R. 8-19, 299-302.   On September

18, 2012, the Appeals Council denied Plaintiff's request for review.   R. 1-6.   The ALJ's

decision stands as the final decision of the Commissioner.

On November 16, 2012, Plaintiff filed a complaint requesting judicial review of the

Commissioner's final decision.   Doc. 1.   Both parties filed memoranda of law, docs. 16

and 17, which have been considered.

---

chronology of the prior case, doc. 17 at 2 n.2, and averred that the relevant period in the
pending case begins on April 11, 2008, presumably thought to be the day after ALJ Stacy
entered his decision (actually April 5, 2008, doc. 20-2-the day after he entered his
decision), through February 23, 2011, the day ALJ Morgan entered his decision in this
case, with the caveat that the last day for DIB benefits is March 31, 2010, R. 23; *see* Case
No. 1:08cv252-MP/WCS, doc. 1-2, and the date April 10, 2008, with the "10" crossed
through and replaced with a "4."   Thus, the Commissioner takes issue with Plaintiff's
alleged onset date, although ALJ Morgan used the June 1, 2007, date stated by Plaintiff
at hearing and elsewhere in the record, R. 44, 47, 208.

## II.  Findings of the ALJ

The ALJ made several findings relative to the issues raised in this appeal:

1.   "The claimant meets the insured status requirements of the Social Security Act through March 31, 2010."  R. 25; *see supra* n.1.

2.   "The claimant has not engaged in substantial gainful activity since June 1, 2007, the alleged onset date."  R. 25; *see supra* n.1.

3.   "The claimant has the following severe impairments: arthritis."  R. 25.  The ALJ found that Plaintiff's "medically determinable mental impairment of an adjustment disorder does not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and is therefore nonsevere."  R. 26. After discussing some of the evidence, the ALJ determined that Plaintiff had *mild* limitations in activities of daily living; *mild* difficulties in maintaining social functioning; *mild* difficulties in maintaining concentration, persistence or pace; and *no* episodes of decompensation of extended duration.  R. 26-27.

4.   "The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1."  R. 27.

5.   "[T]he claimant has the residual functional capacity [RFC] to perform the full range of medium work as defined in 20 CFR 404.1567(c) and 416.967(c)." R. 27.

6.   "The claimant is capable of performing past relevant work as a registered nurse.  This work does not require the performance of work-related activities precluded by the claimant's [RFC]."  R. 31.

7.   "The claimant has not been under a disability, as defined in the Social Security Act, from June 1, 2007, through the date of this decision."  R. 31.

## III.  Legal Standards Guiding Judicial Review

This Court must determine whether the Commissioner's decision is supported by

substantial evidence in the record and premised upon correct legal principles.

42 U.S.C. § 405(g); <u>Chester v. Bowen</u>, 792 F.2d 129, 131 (11th Cir. 1986).  "Substantial

evidence is more than a scintilla, but less than a preponderance.   It is such relevant

evidence as a reasonable person would accept as adequate to support a conclusion."

Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted); accord

Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005). "The Commissioner's factual

findings are conclusive if supported by substantial evidence." Wilson v. Barnhart, 284

F.3d 1219, 1221 (11th Cir. 2002) (citations omitted).[2]

"In making an initial determination of disability, the examiner must consider four

factors: '(1) objective medical facts or clinical findings; (2) diagnosis of examining

physicians; (3) subjective evidence of pain and disability as testified to by the claimant

and corroborated by [other observers, including family members], and (4) the claimant's

age, education, and work history.'" Bloodsworth, 703 F.2d at 1240 (citations omitted).

A disability is defined as a physical or mental impairment of such severity that the

claimant is not only unable to do past relevant work, "but cannot, considering his age,

education, and work experience, engage in any other kind of substantial gainful work

which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). A disability is an

"inability to engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected to result in death or

---

[2]   "If the Commissioner's decision is supported by substantial evidence we must affirm, even if the proof preponderates against it." Phillips v. Barnhart, 357 F.3d 1232, 1240, n.8 (11th Cir. 2004) (citations omitted). "A 'substantial evidence' standard, however, does not permit a court to uphold the Secretary's decision by referring only to those parts of the record which support the ALJ. A reviewing court must view the entire record and take account of evidence in the record which detracts from the evidence relied on by the ALJ." Tieniber v. Heckler, 720 F.2d 1251, 1253 (11th Cir. 1983). "Unless the Secretary has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's 'duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.'" Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981) (citations omitted).

which has lasted or can be expected to last for a continuous period of not less than 12

months." 42 U.S.C. § 423(d)(1)(A); *see* 20 C.F.R. § 416.909 (duration requirement).

Both the "impairment" and the "inability" must be expected to last not less than 12 months.

Barnhart v. Walton, 535 U.S. 212 (2002). "For SSI claims, a claimant becomes eligible in

the first month where she is both disabled and has an SSI application on file." Moore v.

Barnhart, 405 F.3d at 1211. In addition, an individual is entitled to DIB if she is under a

disability prior to the expiration of her insured status. *See* 42 U.S.C. § 423(a)(1)(A) and

(d); Moore v. Barnhart, 405 F.3d at 1211; Torres v. Sec'y of Health & Human Servs., 845

F.2d 1136, 1137-38 (1st Cir. 1988); Cruz Rivera v. Sec'y of Health & Human Servs., 818

F.2d 96, 97 (1st Cir. 1986).

The Commissioner analyzes a claim in five steps. 20 C.F.R.

§§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v):

1. Is the individual currently engaged in substantial gainful activity?

2. Does the individual have any severe impairments?

3. Does the individual have any severe impairments that meet or equal
   those listed in Appendix 1 of 20 C.F.R. Part 404, Subpart P?

4. Does the individual have any impairments which prevent past relevant
   work?

5. Do the individual's impairments prevent other work?

A positive finding at step one or a negative finding at step two results in disapproval of the

application for benefits. A positive finding at step three results in approval of the

application for benefits. At step four, the claimant bears the burden of establishing a

severe impairment that precludes the performance of past relevant work. Consideration

is given to the assessment of the claimant's RFC and the claimant's past relevant work. If the claimant can still do past relevant work, there will be a finding that the claimant is not disabled.   If the claimant carries this burden, however, the burden shifts to the Commissioner at step five to establish that despite the claimant's impairments, the claimant is able to perform other work in the national economy in light of the claimant's RFC, age, education, and work experience.   Phillips, 357 F.3d at 1237; Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999); Chester, 792 F.2d at 131; MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986); 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the Commissioner carries this burden, the claimant must prove that he or she cannot perform the work suggested by the Commissioner.   Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).

## IV.  Legal Analysis

### 1. Introduction

Plaintiff argues ALJ Morgan erred at step two in finding that Plaintiff's mental impairment did not cause more than mild limitations in functioning.   Doc. 16 at 1, 19-23. In her memorandum, Plaintiff relies on two reports that were considered by the ALJ: 1) an April 2, 2009, consultation examination report prepared by Raymond P. Schoenrock, Ph.D., doc. 16 at 7-8; and 2) a March 20, 2010, psychological evaluation performed by Helen Elizabeth Cadiz, Ph.D, doc. 16 at 9, but only refers to Dr. Cadiz's report in the argument portion of her memorandum, doc. 16 at 21.

Over the vigorous objection of the Commissioner, doc. 17 at 12-14, Plaintiff also relies on discrete parts of records that appear to have been considered by ALJ Stacy in

Case No. 1:08cv252-MP/WCS, but not ALJ Morgan.   *See* doc. 16 at 9-11.   These

records include the opinions of Andres Nazario, Jr., Ph.D. (May 11, 2005), and William E.

Benet, Ph.D. (May 30, 2007), which were expressly considered by ALJ Stacy, doc. 20-1

at 25-27, in the prior case, and Robert Glazer, Ph.D. (January 24, 1991), and A. Alvarez,

M.D. (May 19, 2005), *id.*, which are in the record in the *prior* case and pre-date Plaintiff's

alleged onset date in this case of June 1, 2007, *see supra* n.1.   *See* doc. 20.   Plaintiff

does not refer to these opinions in the argument portion of her memorandum.   Doc. 16 at

19-22.

After this Court reviewed the memoranda, the Court entered an Order requesting

Plaintiff to furnish the Court with all documents relied on by Plaintiff in her memorandum,

doc. 18, and Plaintiff complied, doc. 20.   The Commissioner was also requested to

provide the Court with "Attachment A" that was referenced in her memorandum, doc 17 at

2, n.2, and the Commissioner complied, doc. 19.

The opinions of Drs. Glazer, Nazario, and Benet, were discussed by Magistrate

Judge Sherrill in the prior case.[3]   <u>Conner v. Astrue</u>, 2009 U.S. Dist. LEXIS, at *9-16.

Judge Sherrill referred to and quoted from what appears to be a one-page document from

Dr. Glazer (page 159, R. 20-5 at 159) and noted that Dr. Glazer's "treatment records are

not in evidence." *Id.* at *9.   (Dr. Glazer was unaware of Plaintiff's "mental condition

since her last session in 1991."   Doc. 20-5 at 159.)   Judge Sherrill also referred to and

quoted from records of Drs. Nazario and Benet.   2009 U.S. Dist. LEXIS, at *9-16.   After

considering these opinions and other evidence, Judge Sherrill recommended that ALJ

---

[3]   ALJ Stacy expressly considered the opinions of Drs. Nazario and Benet.   Doc.
20-1 at 25-27.

Stacy's decision be affirmed and that recommendation was adopted and affirmed on appeal.

Plaintiff has not asked this Court to review the decision made in her prior case. Plaintiff has cited no legal basis for this Court to consider evidence that was presented in her prior case and not presented to ALJ Morgan or the Appeals Council. Although Plaintiff has submitted (pursuant to an Order from this Court) evidence from the prior case that she relies on in her memorandum, the fact that the records now appear in this record does not help Plaintiff, for this Court has no cited authority to consider that evidence.

To the extent that Plaintiff might have argued she was submitting additional evidence that was new and material, warranting a remand under the sixth sentence of 42 U.S.C. § 404(g), she did not make this argument and further did not demonstrate good cause why she did not present this evidence to ALJ Morgan and the Appeals Council and, as a result, she waived this argument. *See* Caulder v. Bowen, 791 F.2d 872, 877 (11th Cir. 1986); *see also* 20 C.F.R. §§ 404.970(b) (Appeals Council may consider new and material evidence), 416.1470(b) (same).[4]

Plaintiff's arguments related to her prior claims are not new because they, as well as the cited records, were in existence, available, and considered prior to ALJ Morgan's decision in this case. All of the cited evidence from Plaintiff's prior case related to Plaintiff's evaluation and treatment **prior** to her alleged onset date in this case, whether

---

[4] Any party to a hearing before an ALJ has a right to appear before the ALJ and present evidence and to state his or her position. 20 C.F.R. §§ 404.950(a), 416.1450(a). Also, "[t]he [ALJ] may receive evidence at the hearing even though the evidence would not be admissible in court under the rules of evidence used by the court." 20 C.F.R. §§ 404.950(c), 416.1450(c).

that date be June 1, 2007, or April 5, 2008.   *See supra* n.1.

The Court is well aware that "[w]hile a claimant need only show that an alleged impairment has lasted or can be expected to last for the 12 month period to meet the duration requirement, a claimant alleging a mental impairment may face a difficulty not presented in cases involving physical impairment."   Singletary v. Bowen, 798 F.2d 818, 821 (5th Cir. 1986); *see* Lane v. Astrue, No. 1:09CV00159-MP-AK, 2010 U.S. Dist. LEXIS 75846, at *28-30 (N.D. Fla. July 28, 2010) (citing Singletary).   In Singletary, the court agreed with the assessment of other courts "that a claimant whose claim is based on a mental condition does not have to show a 12 month period of impairment unmarred by any symptom-free interval."   Singletary, 798 F.2d at 821-22 (citations omitted).   Further, "[a] finding that a claimant has a mental impairment which manifests itself from time to time over a long-term period is not inconsistent with the language of the statute, which requires that an impairment last 'for a continuous period of 12 months.'   Of course, as required by the regulations, the claimant must present evidence which indicates that his mental condition is a long-term problem and not just a temporary setback."   Singletary, 798 F.2d at 822 (citations omitted).

Here, Plaintiff claims that she "is disabled because, as a result of her long[-]term mental health issues which include an Adjustment Disorder with Mixed Anxiety and Depression and a Personality Disorder Not Otherwise Specified, She [sic] is not able to stay on task, performing the task the employer would be paying her to do."   Doc. 16 at 6. The Court has reviewed the opinions that were considered in the prior case and cited by Plaintiff, ALJ Stacy's decision, and the ensuing Court opinions as background

information.   For the purpose of deciding this case, however, the issue is whether there is substantial evidence in the record **before ALJ Morgan** to sustain his findings in light of the issues raised by Plaintiff and whether he correctly applied controlling law.[5]

### 2.   The ALJ's Decision

At step two, the issue is whether the claimant has shown that he or she has a condition that has more than "a minimal effect on her ability to: walk, stand, sit, lift, push, pull, reach, carry, or handle, etc."   Flynn v. Heckler, 768 F.2d 1273, 1275 (11th Cir. 1985) (relying on 20 C.F.R. § 404.1521).   To be considered "severe," a medical condition must constitute more than a "deviation from purely medical standards of bodily perfection or normality."   McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986).   "[I]n order for an impairment to be non-severe, 'it [must be] a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience.'"   Parker v. Bowen, 793 F.2d 1177, 1181 (11th Cir. 1986), *citing* Brady v. Heckler, 724 F.2d 914, 920 (11th Cir. 1984), Edwards v. Heckler, 736 F.2d 625, 630 (11th Cir. 1984), and Flynn, 768 F.2d at 1274. "Step two is a threshold inquiry.   It allows only claims based on the most trivial impairments to be rejected.   The claimant's burden at step two is mild. . . .Claimant need show only that her impairment is not so slight and its effect is not so minimal."   McDaniel v. Bowen, 800 F.2d 1026, 1031 (11th Cir. 1986) (clarifying Brady).   It was been said that

---

[5]   *See* McKenzie v. Comm'r of Soc. Sec., 362 F. App'x 71, 73 (11th Cir 2010) (unpublished) (citing Reynolds v. Bowen, 844 F.2d 451, 453-54 (7th Cir. 1988) (explaining evidence in prior applications was "completely irrelevant" to the instant application, which alleged an onset date beginning after the prior applications were denied).   *See also supra* n.1.

step two of the sequential analysis may do no more than screen out de minimus claims.

Stratton v. Bowen, 827 F.2d 1447, 1453 (11th Cir. 1987).[6]

At step two, the ALJ determined that Plaintiff had one severe impairment: arthritis.

R. 25. Relevant here, the ALJ determined that Plaintiff's "medically determinable

impairment of an adjustment disorder does not cause more than minimal limitation in [her]

ability to perform basic mental work activity and is therefore nonsevere." R. 26. In

making this finding, the ALJ "considered the four broad functional areas set out in the

disability regulations for evaluating mental disorders and in section 12.00C of the Listing

of Impairments." R. 26-27.

Prior to making findings regarding the four functional areas, the ALJ summarized

the opinions of Drs. Schoenrock and Cadiz and other evidence. R. 26-27.

> On April 2, 2009, the claimant was consultatively evaluated by Raymond
> Schoenrock, Ph.D, a licensed clinical psychologist. The claimant reported that
> she was unable to work because of problems with anxiety and depression, as well
> as osteoarthritis, especially in her thumb joints. She reported a remote history of
> psychiatric inpatient treatment as a teenager, as well as outpatient treatment in the
> late 1980s and again in1995. Consistent with her testimony, the claimant denied
> the use of any prescribed medications for a mental health impairment, and instead
> stated that she utilized physical exercise and herbal supplements. Results of the
> mental status examination were largely benign and Dr. Schoenrock diagnosed
> adjustment disorder with mixed anxiety and depressed mood; personality disorder
> not otherwise specified; and pain
> disorder associated with a general medical condition, osteoarthritis.
> Dr. Schoenrock found the claimant had an adequate capacity in the areas of
> understanding and memory and social interaction. He noted that her capacity for
> sustained concentration and persistence, and adaptation, were likely to be
> primarily affected by her medical condition (Exhibit 15F*). [See* R. 346-48
> (complete report)].

---

[6] The ALJ is not required, however, to identify all of the impairments that should
be considered severe. *See* Heatly v. Comm'r of Soc. Sec., 382 F. App'x 823, 825 (11th
Cir. 2010) (unpublished); *see also* Mariarz v. Sec'y of Health & Human Servs., 837 F.2d
240, 244 (6th Cir. 1987).

On March 20, 2010, through Vocational Rehabilitation services, the claimant was evaluated by Helen Cadiz, PhD.   Dr. Cadiz diagnosed adjustment disorder with mixed anxiety and depression related to her employment status, difficulty with her children, and her financial issues.   Dr. Cadiz found the claimant's developmental history was not consistent with that of a personality disorder.
Recommendations for a medical assessment of her arthritic condition and a work evaluation, as well as counseling, were provided.   The record reflects that the claimant has received ongoing counseling services through Vocational Rehabilitation (Exhibit 15F).   [*See* R. 493-97 (complete report)].

R. 26.

In the argument portion of her memorandum, Plaintiff refers to a portion of

Dr. Cadiz's March 20, 2010, evaluation, including her assessment that Plaintiff had a

Global Functioning Assessment (GAF) score of 51.[7]   Doc. 16 at 21.   Accordingly, a

---

[7]   The American Psychiatric Association: *Diagnostic and Statistical Manual of Mental Disorders* (DSM-IV-TR) (4th Ed. Text Revision 2000) includes the GAF Scale that is primarily used by mental health practitioners.   The GAF Scale is used to report "the clinician's judgment of the individual's overall level of functioning" (with regard to only psychological, social, and occupational functioning) and "may be particularly useful in tracking the clinical progress of individuals in global terms, using a single measure."   *See* DSM-IV-TR 32-34.   The GAF scale is divided into 10 ranges of functioning, each with a 10-point range in the GAF scale.   *Id.   See* Nichols v. Astrue, Case No. 3:11cv409/LC/CJK, 2012 U.S. Dist. LEXIS 119347, at *26-29 (N.D. Fla. Aug. 7, 2012) (discussing the GAF scale).   A GAF scale rating of 41-50 is indicative of serious symptoms or any serious impairment in social, occupational or school functioning.   *Id.* A GAF scale rating of 51 to 60 indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning.   *Id.*   A GAF scale rating of 61 to 70 indicates some *mild* symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships.   DSM-IV-TR at 34.   The "Commissioner has declined to endorse the GAF scale for 'use in the Social Security and SSI disability programs,' and has indicated that GAF scores have no 'direct correlation to the severity requirements of the mental disorders listings.'"   Wind v. Barnhart, 133 F. App'x 684, 692 n.5 (11th Cir. 2005) (citing 65 Fed. Reg. 50746, 50764-65 (Aug. 21, 2000)).   In the Fifth Edition of the *Diagnostic and Statistical Manual of Mental Disorders* (DSM-5) (2013), "[i]t was recommended that the GAF be dropped from DSM-5 for several reasons, including its conceptual lack of

more detailed discussion of Dr. Cadiz's evaluation is in order.

On March 20, 2010, Plaintiff was referred by the state Department of Vocational Rehabilitation for evaluation by psychologist Dr. Cadiz. Plaintiff "relayed that she is not able to work due to experienced emotional problems, personality problems and osteoarthritis." R. 493. Dr. Cadiz refers to Dr. Benet's May 30, 2007, evaluation and his conclusion "that she needed therapy for depression and personality maladjustment." R. 493-94.

Plaintiff is described as neatly dressed, clean, well groomed, amiable, cooperative, and fully oriented. She established and maintained eye contact, had satisfactory attention span, normal speech, no psychotic symptoms or homicidal ideation, good appetite, and no sleep problems. Plaintiff denied being depressed, but Dr. Cadiz noted her mood as "mildly depressed," and that she expressed fear of "losing her property." R. 494. Plaintiff reported she was not suicidal but "has been extremely miserable due to experienced tooth and joint pain. She relayed that the pain interfered with her ability to complete tasks throughout the day. She denied the experience of homicidal ideation." *Id.* It is noted that Plaintiff "does not experience any problems with her sleep." *Id.* Plaintiff reported "using Naproxin [sic] as needed for pain consequent to arthritis." *Id.* Dr. Cadiz summarized Plaintiff's relevant history.

R. 494-95.

Plaintiff's MMPI test profile showed her to be "within the normal range of

---

clarity (i.e., including symptoms, suicide risk, and disabilities in its descriptors) and questionable psychometrics in routine practice. In order to provide a global measure of disability, the WHO DSM-5 (see the chapter "Assessment Measures")." DSM-5 at 16.

personality functioning." R. 495. Dr. Cadiz opined that Plaintiff was

> not experiencing any internal anxiety or depression. She perceives her problems as based on circumstances and is likely to blame others for any problems that she is experiencing. [Plaintiff's] profile indicates a person who does not easily conform to authority and whose risk taking behavior may alienate others from her. She is likely, immature and may occasionally show bad judgment. [Plaintiff] completed the BHS, BAI and BDS. On these self[-]report measures she acknowledges minimal symptoms of anxiety, depression and hopeless. The overall results suggest that she, in all likelihood, worries about her circumstances but believes that the situation will be manageable when she becomes employed.

> These results converge to indicate primary diagnosis of Adjustment Disorder with Mixed Anxiety and Depression. She continues to experience feelings of sadness and loss regarding her children and past circumstances. These chronic feelings are exacerbated by her current unemployment situation and her desire to become economically stable.

R. 495-96. Dr. Cadiz noted that her findings were different from Dr. Benet's findings in

2007. R. 496.

> Dr. Benet opined that [Plaintiff] suffered from a non[-]specified personality disorder. According to [Plaintiff's] report, she does not have a developmental history consistent with a personality disorder. Personality Disorders began during childhood and develop from environmental, child rearing practices and natural traits that the child possesses. [Plaintiff] did not describe a history with difficulties in any of these areas. It is likely, that her clinical presentation and descriptions in 2007 were heavily influenced by current circumstances, rather than a pathological personality pattern.

> The current results find that she is suffering from an adjustment disorder that is related to inability to be gainfully employed, difficulties with her children and consequent financial problems. While [Plaintiff] could benefit from counseling and that counseling would facilitate her readiness for employment, it is unlikely that she will want to participate in counseling. [Plaintiff] believes that her primary problems are physical and lacks insight regarding the impact of her emotional problems on her readiness for work.

R. 496-97.

Dr. Cadiz recommended a "work evaluation to determine whether she can return to

nursing and the type of work she can perform," and support counseling. R. 497. Dr.

Cadiz noted that Plaintiff's prognosis was good if the "intervention strategies are implemented quickly," and that "counseling would facilitate a good vocational rehabilitation and successful work adjustment." *Id*.

The support counseling notes from May 2010 to January 2011, R. 442-92, show that Plaintiff's primary stressors were her financial difficulties in job uncertainty, although she complained about her physical difficulties and other family-related issues with her daughter and granddaughter. Often, Plaintiff's mood and affect are described as depressed, she is often in emotional distress, although alert and oriented, e. g., x4. R. 442, 444-64, 467-92 (counseling sessions). Some of these counseling sessions are reported below.

- On May 10, 2010, Plaintiff said that she was going to apply for the companion job. It was noted that she was "dealing with major financial stress as well as significant pain." R. 479;

- On May 17, 2010, Plaintiff announced that she had been hired for the companion job. She stated "I feel so much better . . . not so oppressed." It was noted that she was smiling, her eyes were "twinkling," her mood and affect were "cheerful," and she seemed "hopeful about her future now that she has a job." R. 491;

- On June 29, 2010, Plaintiff stated: "I feel more like a normal person . . . I like this job." R. 480, 485;

- On July 12, 2010, Plaintiff reported that she had an "enjoyable outing with new friends last week," and that she planned to do this every other week." She also reported on a "return to her place of spiritual support, and seeing some old friends there." She voiced concern about being able to pay her bills because she had not yet been paid for the previous week. R. 470;

- On November 8, 2010, Plaintiff reported that she had been fired from the companion job. It was noted that she appeared appropriately anxious. She again expressed concern about her financial circumstances. She talked about coping with the stress in part with support from her friends. R. 450;

- On November 24, 2010, Plaintiff again focused on "her financial stressors and resulting fears of potential loss of house and property." R. 448;

- On January 5, 2011, Plaintiff reported that a friend had assumed her mortgage and lent her some money. It was noted that Plaintiff seemed appropriately "somewhat depressed and distressed" about her "lack of finances and uncertainty about future employment and income." R. 444; and,

- On January 17, 2011, Plaintiff reported that she was "hanging in there" and able to take pleasure in nature, her pets, and biking with her dogs. R. 442.

After discussing Dr. Cadiz's evaluation, the ALJ considered the Psychiatric Review Technique's completed by Gary Buffone, Ph.D., on April 20, 2009, R. 350-63, and Michael Zelenka, Ph.D., on October 29, 2009, R. 385-98. R. 26. Both concluded that Plaintiff's mental impairment was non-severe. R. 26, 360, 362, 395, 397. The ALJ agreed and stated:

> Likewise, based on the claimant's testimony, the lack of evidence of the use of psychotropic medications, and the treatment records of healthcare providers that failed to document any signs or symptoms consistent with a severe mental impairment, the undersigned also finds the claimant's mental impairment is not severe. Accordingly, some weight has been given to the State agency opinions.

R. 26.

After discussing this evidence and other evidence, including Plaintiff's reported activities, the ALJ determined that Plaintiff had *mild* limitations in activities of daily living; *mild* difficulties in maintaining social functioning; *mild* difficulties in maintaining concentration, persistence or pace; and *no* episodes of decompensation of extended duration. R. 26-27. The ALJ ultimately determined that Plaintiff's "medically determinable mental impairment cause no more than 'mild' limitation in any of the first three functional areas and 'no' episodes of decompensation which have been of

extended duration in the fourth area" and, therefore, they are non-severe.   *Id.*[8]

The ALJ determined Plaintiff's RFC and considered Plaintiff's hearing testimony, R. 28, and medical and other evidence beginning in and around June 2008 when Plaintiff sought treatment with Dr. Slattery, an orthopedist, through her January 2011 hand surgery, and her descriptions of daily activities.   R. 28-31.   The ALJ also considered the opinions of two state agency medical consultants who completed physical RFC capacity assessments in April 2009, R. 364-71 (Danny Hood, a "single decisionmaker"), and October 2009, R. 399-406 (Minal Krishnamurthy, M.D.).   The ALJ gave their opinions "some weight."   R. 31.

The ALJ summarized his findings:

> In sum, the claimant's activities of daily living, medical evidence of record, and the findings of the State agency suggest that the claimant can sustain a greater capacity for work that has been alleged in connection with this application.   Given this evidence, the undersigned concludes that the claimant's subjective complaints and alleged limitations are not fully persuasive.   The objective evidence fails to document the presence of any impairment or combination of impairments that could reasonably be expected to result in physical or mental symptoms of such a severity or frequency as to preclude the range of work described in the residual functional capacity set forth above.   The undersigned finds the claimant retains the ability, despite her impairments, to perform medium exertional work activity.

R. 31.   The ALJ determined that Plaintiff had the RFC to perform the full range of medium work and that Plaintiff is capable of performing past relevant work as a registered nurse. R. 27, 31.

---

[8]   The ALJ correctly stated that the limitations identified in the paragraph B criteria are not an RFC assessment, but are used to rate the severity of mental impairments at steps two and three.   R. 27.

### 3. Plaintiff's Arguments

Plaintiff argues that there is no substantial evidence to support the ALJ's PRT, paragraph B, findings that Plaintiff has mild impairments regarding activities of daily living, social functioning, and concentration, persistence or pace.   Doc. 16 at 19-21. After making this assertion, Plaintiff suggests that "no reasonable person would think that so of a claimant with a recurrent major depressive disorder with psychosis."   Doc. 16 at 20.   Plaintiff does not refer to any portion of the record where Plaintiff received such a diagnosis.   *Id.*   The Commissioner responds, in part: "There is absolutely no evidence that Plaintiff was ever diagnosed with 'recurrent major depressive disorder with psychosis,' or that Plaintiff ever even alleged such a condition," "[n]or does such a diagnosis appear in Plaintiff's arguments related to her prior claims.   (Pl.'s Br. At 9-11)."   The Court agrees with the Commissioner.

In the argument portion of her memorandum, Plaintiff relies on selected portions of Dr. Cadiz's March 20, 2010, evaluation, R. 493-97, to support her argument that she has a disabling mental impairment.   Doc. 16 at 21.   The ALJ considered Dr. Cadiz's evaluation, R. 26, at step two, and in conjunction with other evidence determined that Plaintiff had mild impairments.   R. 26-27.   To the extent that Plaintiff is arguing the GAF score of 51 assigned by Dr. Cadiz demonstrates that Plaintiff is disabled, doc. 16 at 21, this argument is without merit.   As noted in footnote six, a GAF scale rating of 51 to 60 indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning.   *See supra* n.7.   The "Commissioner has declined to endorse the GAF scale for 'use in the Social Security and SSI disability programs,' and has indicated

that GAF scores have no 'direct correlation to the severity requirements of the mental disorders listings.'" Wind v. Barnhart, 133 F. App'x at 692 n.5 (citing 65 Fed. Reg. 50746, 50764-65 (Aug. 21, 2000)). Further, Dr. Cadiz did not offer an explanation in her report regarding this GAF score. Also, a GAF score suggesting moderate symptoms does not support a conclusion that a mental impairment was severe. See Ward v. Astrue, 286 F. App'x 647, 650 n.1 (11th Cir 2008).

Although the ALJ did not specifically discuss the single GAF score, this does not require a remand. See Bailey v. Astrue, No. 3:09-cv-J-JRK, 2010 U.S. Dist. LEXIS 82996, at *26 (M.D. Fla. Aug. 13, 2010). The ALJ's failure to refer specifically to the GAF score does not render the ALJ's decision unsupported by substantial evidence. See Dyer v. Barnhart, 395 F.3d 1206, 2011 (11th Cir. 2005) ("there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision . . . is not a broad rejection which is "not enough to enable [a reviewing court] to conclude that [the ALJ] considered [the claimant's] medical condition as a whole" (citation omitted)). The standard of review is "whether the ALJ's conclusion as a whole was supported by substantial evidence in the record." Dyer v. Barnhart, 395 F.3d at 1212 (citation omitted).

Even when considering the evidence that may detract from the ALJ's findings, the record does not substantiate her claim that her mental condition is such that it is associated with work-related functional limitations. Substantial evidence supports the ALJ's findings that Plaintiff's mental impairment is non-severe.

Plaintiff also argues that the ALJ erred when he did not consider the combined

effects of Plaintiff's alleged impairments when making his PRT findings at step two.

Plaintiff cites to case law but does not cite to record evidence to support this argument.

Doc. 16 at 22.

The ALJ found at step two that Plaintiff had a severe impairment of arthritis.   R.

25.   The ALJ stated that this severe impairment was "established by the medical

evidence and is 'severe' within the meaning of the Regulations because it causes more

than a minimal limitation in the claimant's ability to perform basic work activities."   R.

26.   The ALJ further found that plaintiff's "medically determinable mental impairment of

an adjustment disorder does not cause more than minimal limitation in [Plaintiff] ability

to perform basic mental work activities and is therefore nonsevere."   *Id.*   Finally, the

ALJ found that Plaintiff "does not have an impairment or combination of impairments

that meets or medically equals one of the listed impairments in 20 CFR part 404,

Subpart P, Appendix 1."   R. 27.   Plaintiff does not suggest this finding is error.   See

doc. 16.

The ALJ's decision as a whole shows that the ALJ considered the combined

effects of Plaintiff's impairments, and substantial evidence supports the ALJ's findings

in this regard.   The ALJ considered Plaintiff's alleged impairments, discussed the

extent to which they affected her capacity to perform work-related activities, and

adequately accounted for her credibly established limitations in assessing her

functional capacity to perform her past relevant work.   R. 25-31.   The ALJ's findings

evidence consideration of the combined effect of Plaintiff's alleged impairments.   *See*

*generally* Jones v. Dep't of Health & Human Servs., 941 F. 2d 1529, 1533 (11th Cir.

1991); *see also* Hutchinson v. Astrue, 408 F. App'x, 324, 327 (11th Cir. 2011)

(unpublished); Wilson v. Barnhart, 284 F.3d 1291, 1224-25 (11th Cir. 2002).

## V. Conclusion

Considering the Record as a whole, the findings of the ALJ are based upon

substantial evidence in the record and the ALJ correctly applied the law.   Accordingly,

it is respectfully recommended that the decision of the Commissioner to deny Plaintiff's

applications for Social Security benefits be **AFFIRMED.**

**IN CHAMBERS** at Tallahassee, Florida, on September 30, 2013.


**s/ Charles A. Stampelos**
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**



## NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation.   A party may respond to another party's objections within 14 days after being served with a copy thereof.   Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**